UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIREK BORUTA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A., et al.,<br><br>Defendants. | Case No. 19-cv-07257-WHO<br><br>**ORDER DENYING MOTION TO REMAND AND GRANTING MOTION TO DISMISS WITH PREJUDICE**<br><br>Re: Dkt. Nos. 11, 32, 34 |

Plaintiffs Mirek and Maria Boruta (the "Borutas") are serial bankruptcy filers and this is their second lawsuit against JP Morgan Chase N.A. ("Chase") and Quality Loan Service Corporation ("Quality") involving the April 2019 foreclosure of real property in Berkeley, California after the Borutas' undisputed eleven-year default on their loan.[1] I granted motions to dismiss in their initial lawsuit, expressing "skeptic[ism] that the Borutas have a viable claim against" Chase and Quality. *Boruta et al v. JP Morgan Chase, N.A. et al*, No. 19-cv-03164-WHO ("*Boruta I*"), 2019 WL 4010367, at *7 (N.D. Cal. Aug. 26, 2019). I nevertheless gave the Borutas leave to amend and "cautioned that they must bring plausible allegations that have some factual basis" and that "[t]hey should also explain why they did not plead any such new facts earlier." *Id.*

Rather than amend, the Borutas voluntarily dismissed *Boruta I*, retained new counsel, and filed this action ("*Boruta II*") in state court, which was removed here, bringing largely the same

---

[1] In addition to these two civil suits, the Borutas have also filed seven bankruptcy proceedings that are all part of—in the words of this District's Chapter 13 Standing Trustee—"an egregious scheme of multiple filings . . . to cause delay and hinder creditors from exercising their rights." *See* Request for Judicial Notice in Support of Motion to Dismiss First Amended Complaint ("Chase RJN") [Dkt. No. 33], Ex. A at 6 (copy of Chapter 13 Standing Trustee's Motion to Dismiss with a 12 Month Bar to Refiling). On February 6, 2020, United States Bankruptcy Judge Charles Novack issued a 12-month bar to refiling. *See* Order Dismissing Chapter 13 Case with a 12 Month Bar to Refiling, Case No. 19-42568 [Dkt. No. 38].

1  allegations under a different theory. They now allege that they were surprised to learn that the April 23, 2019 trustee's sale occurred. But they were clearly aware of it given that they filed *Boruta I* on April 19, 2019 in an effort to stop that scheduled sale. They also contend that the trustee's sale was not a true sale, but despite multiple opportunities to amend, including their First Amended Complaint filed here, they fail to provide sufficient factual allegations to support that contention. For the reasons stated below, the Borutas' motion to remand is DENIED and Chase and Quality's motions to dismiss the FAC are GRANTED with prejudice.

## BACKGROUND

### I. FACTUAL BACKGROUND

In 2004, the Borutas purchased property located at 6 Perth Place, Berkeley, CA 94705 (the "Property"). First Amended Complaint ("FAC") [Dkt. No. 31] ¶ 8. They executed a Deed of Trust and Promissory Note in the amount of $1,260,000 in favor of Washington Mutual Bank ("WaMu"). *Id.* ¶ 9; *see* Chase RJN, Ex. H.[2] The servicing of the loan was transferred to Chase who also became the beneficiary under the loan when it acquired WaMu. FAC ¶ 9; Chase RJN, Exs. B, C. Quality became the trustee under the loan. FAC ¶ 9; Quality RJN, Ex. F.

The Borutas defaulted on the loan in August 2008, as shown by the March 17, 2009 Notice of Default. *See* Chase RJN, Ex. D. On July 17, 2018, Quality, acting in its capacity as foreclosure trustee, recorded a Notice of Trustee's Sale. *See* Chase RJN, Ex. E. The Borutas allege that since

---

[2] Along with its motion to dismiss, Chase requests that I take judicial notice of several documents related to: the bankruptcy proceedings of the Borutas (Exs. A, G, and I); the P&A Agreement (Ex. B); the Deed of Trust recorded on April 21, 2004 (Ex. H); the Notice of Default recorded on May 18, 2009 (Ex. D); the Assignment of Deed of Trust recorded on October 10, 2014 (Ex. C); the Notice of Trustee's Sale recorded on July 17, 2018 (Ex. E); and the Trustee's Deed Upon Sale recorded on May 2, 2019 (Ex. F). *See* Chase RJN. Courts routinely take judicial notice of similar public records and these too are appropriate for judicial notice. *See Perez v. Am. Home Mortg. Servicing, Inc.*, No. 12-cv-00932-WHA, 2012 WL 1413300, at *2 (N.D. Cal. Apr. 23, 2012) (taking judicial notice of a deed of trust and notice of default recorded with the Alameda County Recorder's Office); *Eng v. Dimon*, No. 11-cv-3173-MMC, 2012 WL 3659600, at *1 (N.D. Cal. Aug. 24, 2012) (taking judicial notice of the P&A Agreement); *Roca v. Wells Fargo Bank, N.A.*, No. 15-CV-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (taking judicial notice of filings in a bankruptcy proceeding). Chase's request for judicial notice is GRANTED.

Quality also requests that I take judicial notice of these same documents, in addition to copy of the Substitution of Trustee recorded on April 28, 2009 (Ex. F). *See* Request for Judicial Notice in Support of Motion to Dismiss First Amended Complaint ("Quality RJN") [Dkt. No. 35]. For the reasons stated above, Quality's request for judicial notice is GRANTED.

2009 they "have submitted loan modification and short sale requests to Chase with no resolution." FAC ¶ 10. They contend that Chase would provide elusive responses, that "continued until 2019 when Chase and Quality purported to sell [their] property at a trustee's sale for over $200,000.00 less than the fair market value of the property at the time when (1) Chase had promised [them] that the property would not sell and (2) when [they] were in the process of applying for a short sale." *Id.*

The Borutas allege that they spoke with a Chase representative on April 3, 2019 who told them that "as of March 11, 2019, the trustee's sale of [their] property was suspended and that there was no sale date on the property." FAC ¶ 11. Based on this representation, they contend that they "listed their property for sale and secured a short sale buyer who offered to purchase the property for $1,800,000." *Id.* They then submitted that short sale offer to Chase on April 10, 2019 along with a short sale application. *Id.* On April 11, 2019, the Borutas allegedly confirmed that the short sale offer had been received and was under consideration. *Id.* On April 16, 2019, they contend that Chase told them that it completed an appraisal on the property on March 29, 2019, and determined that the property was worth $2,100,000. *Id.* ¶ 12.

The Borutas claim that "to [their] surprise," on April 23, 2019 Chase and Quality purported to conduct a trustee's sale on the property and transfer title of the property to Chase for $1,890,000 – over $200,000 less than what Chase had determined the fair market value of the property to be. FAC ¶ 14. They allege that a "true trustee's sale was not held by Defendant Quality and that Quality instead simply transferred title to Defendant Chase for a fraction of the cost of the property without holding a true sale." *Id.* The Trustee's Deed Upon Sale shows that Chase, as the foreclosing beneficiary of the loan, acquired the Property at the April 23, 2019 trustee's sale. *See* Chase RJN, Ex. F.

## II. PROCEDURAL BACKGORUND

The Borutas initially filed their complaint in *Boruta I* in Alameda County Superior County alleging cancellation of instruments and wrongful foreclosure against Chase, Quality, and U.S. Bank Trust, N.A. 2019 WL 4010367, at *1. On August 26, 2019, I denied the Borutas' motion to remand and granted Chase's and Quality's motions to dismiss. *See id.* at *7. Although I was

3

1 skeptical, I allowed the Borutas to amend their complaint but "cautioned that they must bring

2 plausible allegations that have some factual basis," and "should also explain why they did not

3 plead any such new facts earlier." *Id.*

4 The Borutas filed a notice of voluntary dismissal in *Boruta I* on September 5, 2019. They

5 then filed a second complaint in Alameda County Superior Court on October 1, 2019, realleging

6 wrongful foreclosure and adding unfair business practices claims against Chase and Quality as

7 well as fraud and negligence claims against Chase. *See* Notice of Removal ("NOR"), Ex. A (copy

8 of state court complaint) [Dkt. No. 1]. Chase removed this case based on diversity jurisdiction.

9 *See* NOR. I entered an order relating this case to *Boruta I* on November 22, 2019. [Dkt. No.13].

10 On November 11, 2019, the Borutas filed a motion to remand back to state court. *See*

11 Notice of Motion and Motion for Remand ("Remand Mot.") [Dkt. No. 11]. On December 4,

12 2019, Chase filed a motion to dismiss the Complaint for failure to state a claim. [Dkt. No. 23].

13 On December 18, 2019, the day their response was due, the Borutas filed a notice of non-

14 opposition to Chase's motion, expressing their intent to file an amended complaint. [Dkt. No. 27].

15 On December 27, 2019, Quality also filed a motion to dismiss the Complaint and subsequently the

16 Borutas filed their FAC. The FAC brings all the same allegations and causes of action, except that

17 it drops the fraud claim against Chase.

18 Chase and Quality filed new sets of motions to dismiss the FAC, which are before me now

19 in addition to the pending motion to remand. *See* Defendant JP Morgan Chase Bank, N.A. Notice

20 of Motion and Motion to Dismiss First Amended Complaint ("Chase MTD") [Dkt. No. 32];

21 Quality Loan Service Corporation's Notice of Motion and Motion to Dismiss First Amended

22 Complaint ("Quality MTD") [Dkt. No. 34]. I heard oral argument on February 12, 2020.

**LEGAL STANDARD**

**I. MOTION TO REMAND**

25 A defendant sued in state court may remove the action to federal court if the action could

26 have been brought in federal court in the first instance. 28 U.S.C. § 1441(a). Removal is

27 generally based on the existence of either federal-question jurisdiction or diversity jurisdiction.

28 Federal question jurisdiction exists where the action "aris[es] under the Constitution, laws, or

4

treaties of the United States." 28 U.S.C. § 1331. Diversity jurisdiction exists where the amount in controversy exceeds $75,000 and the case is between citizens of different states, or citizens of a state and citizens or subjects of a foreign state. 28 U.S.C. § 1332(a)(2). A defendant desiring removal must file in the appropriate United States district court a notice of removal "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders" thus far served upon the defendant in the action. 28 U.S.C. § 1446.

If at any time following removal, it appears that removal was improper because of a lack of subject matter jurisdiction, the case must be remanded to state court. 28 U.S.C. § 1447(c). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction;" accordingly, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (internal quotation marks and citations omitted). This strong presumption against removal jurisdiction means that the defendant always has the burden of proving, by a preponderance of the evidence, that removal was proper. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Gaus*, 980 F.2d at 566. Whether removal was proper is determined primarily on the basis of the pleadings at the time of removal. *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998); *Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985). However, the court may also consider affidavits or other "summary-judgment-type evidence" submitted after the defendant's motion to remand is filed. *Singer*, 116 F.3d at 377; *see also Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939-EMC, 2013 WL 2950600 at *3 (N.D. Cal. June 14, 2013) ("A court may properly consider evidence the removing party submits in its opposition to remand, even if this evidence was not submitted with the original removal petition.").

## II. MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant

5

1  is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

**I.  MOTION TO REMAND**

The Borutas move to remand on the basis that there is no subject matter jurisdiction because Quality is a California corporation and its presence in this suit destroys diversity. *See* Remand Mot.[3] Chase claims that Quality, as trustee, is a nominal defendant with no interest in the outcome of the litigation. NOR ¶ 11. It argues that Quality's citizenship is irrelevant to diversity for the purposes of removal. *Id.*

In assessing diversity, "[a] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1183 (9th Cir. 2004). A nominal party is one "who has no interest in the action" and is merely joined to "perform a ministerial act." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000). "The paradigmatic nominal defendant is a trustee, agent, or depositary . . . [who is] joined purely as a means of facilitating collection." *Id.* (internal citations and quotation marks omitted). *S.E.C. v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998)

---

[3] In addition to challenging diversity of citizenship, the Borutas' motion to remand also mentions that "the amount of controversy is not met." Remand Mot. 5. However, their motion makes no argument to this point. The argument has no merit given that Borutas identify a $1.89 million foreclosure price for the Property and allege to "los[ing] nearly $200,000.00 in equity in the home." *Id.* at 7; FAC ¶ 19.

(internal citations and quotation marks omitted); *see also Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1050, 1052 (N.D. Cal. 2009) (trustee defendant named in the complaint solely in its capacity as a trustee and not because of any wrongdoing was a nominal defendant, where trustee filed declaration of nonmonetary status pursuant to California Civil Code section 2924l). That said, a trustee is more than a nominal defendant when the complaint includes substantive allegations and asserts claims for money damages against the trustee. *See Perez v. Wells Fargo Bank, N.A.*, 929 F. Supp. 2d 988, 1002 (N.D. Cal. 2013) (trustee not nominal defendant where plaintiffs assert in their complaint that trustee represented that a foreclosure sale had been cancelled but the sale went forward); *Silva v. Wells Fargo Bank N.A.*, No. CV 11-3200 GAF JCGX, 2011 WL 2437514, at *4 (C.D. Cal. Jun.16, 2011) (trustee not a nominal defendant where plaintiffs alleged it included false statements in the notice of default and failed to include certain required information in the notice of default).

The Borutas contend that their two causes of action against Quality for wrongful foreclosure and unfair business practices show that Quality was acting outside of its trustee's duties. Remand Mot. 7-8; FAC ¶¶ 15-22 (first cause of action to set aside wrongful foreclosure sale), ¶¶ 34-35 (second cause of action for unfair business practices under Cal. Bus. & Prof. Code § 17200). As I found in *Boruta I*, their allegations that Quality participated in wrongful acts or omissions based on a capacity outside of its alleged trustee duties that are not privileged under California Civil Code sections 47 and 2924(d) are wholly conclusory. *Boruta I*, 2019 WL 4010367, at *4-5.

California Civil Code section 2924(d) makes the trustee's fulfillment of its statutory duties privileged communications subject to a qualified common interest privilege under section 47. *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 339-40 (Cal Ct. App. 2008); Cal. Civ. Code § 2924(d). Section 47, in turn, creates a privilege for "a communication, without malice, to a person interested therein." Cal. Civ. Code § 47(c)(1). For this purpose, malice is defined as actual malice, meaning "that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon*, 168 Cal. App. 4th at

7

336.

The Borutas fail to allege any facts that show that Quality acted with malice; instead they conclusorily allege that Quality did not conduct a true sale and therefore acted outside of its trustee's duties. Because Quality's actions are privileged under California Civil Code sections 47 and 2924(d), it is a nominal defendant and irrelevant to the diversity of citizenship between the parties. *See Kelley v. Caliber Home Loans, Inc.,* No. 17-cv-01804, 2018 WL 2064633, at *3 (E.D. Cal. May 3, 2018) (finding "Quality [] must be considered a nominal fraudulently joined defendant" because the "only acts attributable to [the trustee] are those it was statutorily required to perform, and the complaint alleges no facts suggesting actual malice") (internal quotation marks and citation omitted).

The Borutas also argue that Quality is not a nominal defendant because Quality has not filed a declaration of non-monetary status before removal of this action. Remand Mot. 8. Chase clarifies that Quality did file a declaration of non-monetary status the same day Chase removed the case. *See* Chase RJN, Ex. H. The Borutas filed an objection in the state court on November 18, 2019, after submitting its motion to remand in this case, which Chase argues sets forth the same false and conclusory allegations from the Complaint and reiterated in the FAC. *See* Chase Request for Judicial Notice in Support of Its Opposition to Plaintiffs' Motion to Remand [Dkt. No. 18], Ex. I.[4] I addressed this argument in *Boruta I* and found that their proposition that a mere filing of their objections to Quality's declaration of non-monetary status is sufficient to make Quality more than a nominal defendant is "unsupported by any authority." *Boruta I*, 2019 WL 4010367, at *5. The Borutas' motion to remand is DENIED.

## II. QUALITY'S MOTION TO DISMISS

Quality moves to dismiss the Borutas' claims against it for three reasons. First, it argues

---

[4] With its opposition to motion to remand, Chase requests that I take judicial notice of the same documents discussed in footnote 2 and two additional exhibits. Exhibit I is the Objection to Declaration of Nonmonetary Status that was filed by the Borutas in the underlying state court case. *See* Chase Request for Judicial Notice in Support of Its Opposition to Plaintiffs' Motion to Remand [Dkt. No. 18] Ex. I. Exhibit H is the docket of the underlying state court proceedings. *See id.*, Ex. H. A court may take judicial notice of undisputed matters of public record, including publicly available court records. *See United States v. Raygoza-Garcia*, 902 F.3d 994, 1001 (9th Cir. 2018). Chase's request for judicial notice is GRANTED.

8

that the Borutas are judicially estopped from alleging that the trustee's sale did not take place because they previously admitted that it did take place in *Boruta I*. Quality MTD 3-4. The Borutas respond that they made no representations in *Boruta I* regarding the merits of the sale or how the sale took place. Opposition to Quality Motion to Dismiss First Amended Complaint [Dkt. No. 38] 4.

In *Boruta I*, the Borutas alleged that "a Trustee's Sale of the Property is scheduled for April 23, 2019 at 12:00 P.M. and Defendants will proceed with said sale all to the great irreparable harm of Plaintiffs if they are not restrained from doing so." Complaint, *Boruta et al v. JP Morgan Chase, N.A. et al*, No. 19-cv-03164-WHO [Dkt. No. 1] ¶ 27. This shows that they were aware of the sale, but it does not necessarily comment on the merits of the sale and whether it was a true sale or if Quality simply transferred the Property to Chase, as they allege now in their FAC here. *See* FAC ¶ 14.

Quality's second argument has more merit. As discussed above, Quality is a trustee whose actions are privileged by California Civil Code sections 47 and 2924(d). Quality MTD 4-6. California Civil Code section 47 provides that various privileged publications and communications cannot, absent malice, provide a basis for tort liability. *Hundal v. Eagle Vista Equities, LLC*, 726 F. App'x 543, 545-46 (9th Cir. 2018) (citing Cal. Civ. Code § 47) ; *see Hagberg v. Cal. Fed. Bank FSB*, 32 Cal.4th 350, 361 (2004) ("[T]he only tort claim we have identified as falling outside the privilege established by section 47(b) is malicious prosecution."). California Civil Code section 2924(d) specifies that the "mailing, publication, and delivery" of foreclosure notices, and the "[p]erformance" of foreclosure procedures are "privileged communications" within the meaning of section 47. *Hundal*, 726 F. App'x at 545. Section 2924(b) creates further insulation, providing that a trustee "shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage." Cal. Civ. Code § 2924(b)

The Borutas fail to plead sufficient facts to support either an inference that Quality relied on bad faith representations by Chase or that it acted with malice. Quality's motion to dismiss is

9

1  GRANTED. I need not reach its third argument related to failure to state a claim for wrongful
2  foreclosure and unfair business practices.

### III. CHASE'S MOTIONS TO DISMISS

Chase moves to dismiss all claims against it – wrongful foreclosure, unfair business practices, and negligence. It argues that the central allegation of the FAC, that Chase unlawfully sold the property in foreclosure without holding "a public auction," is false given the Borutas' admission in *Boruta I* that a trustee's sale had occurred. Chase MTD 6. It also contends that the Borutas otherwise fail to allege facts to plausibly suggest any impropriety with the April 23, 2019 sale. *Id.* As stated above, their complaint in *Boruta I* did not necessarily admit that the trustee's sale was a true sale, just that the Borutas were aware that it was scheduled for April 23, 2019. But I agree with Chase's second argument that the Borutas fail to plausibly allege any impropriety with the April 23, 2019 sale.

#### A. Wrongful Foreclosure

Wrongful foreclosure is an equitable claim "to have the sale set aside and to have the title restored." *Ram v. OneWest Bank, FSB*, 234 Cal. App. 4th 1, 10-11 (2015) (internal quotation marks and citation omitted). Three elements must be proven: "(1) the trustee . . . caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a . . . deed of trust; (2) the party attacking the sale suffered prejudice or harm; and (3) the trustor . . . tenders the amount of the secured indebtedness or was excused from tendering." *Id.* at 11 (citation omitted).

##### 1. Illegal, Fraudulent, or Willfully Oppressive Sale of the Property

The Borutas claim is based on two theories: (1) that Chase sold the Property without holding a public auction, in violation of California Civil Code section 2924g; and (2) that the Borutas had a pending application for a short sale at the time of the foreclosure, in violation of California Civil Code section 2923.6.

###### a. Section 2924g

"A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly, and a wrongful foreclosure claim must allege with sufficient facts that (1) proper procedure under [sections] 2924 to 2924k was not followed; and (2) the plaintiff was prejudiced as a result."

*Garcia v. Fed. Home Loan Mortg. Corp.*, No. 1:12-CV-00397-AWI, 2012 WL 3756307, at *4 (E.D. Cal. Aug. 28, 2012) (citation omitted).

The Borutas allege that the sale of the Property "was not conducted in accordance to Section 2924g, which requires that the sale of the property be made at auction to the highest bidder." FAC ¶ 17. They contend that Chase "violated Section 2924g when it purported to sell the property not through a public action but through a desk sale." *Id.*[5]

Chase asserts that although the Borutas clearly knew about the scheduled April 23, 2019 foreclosure sale, they "apparently chose not to attend and now speculate that a proper auction never happened because of their personal belief that the purchase price was too low." Chase MTD 7. It argues that the Borutas cannot state a claim on such speculative allegations and that their conclusory allegations regarding the supposed "desk sale" fail to overcome California's common law presumption that a nonjudicial foreclosure sale was conducted regularly and fairly. *Id.*; *see, e.g.*, *Renowitzky v. Wells Fargo Bank N.A*, No. 15-CV-05042-JCS, 2016 WL 3276976, at *9 (N.D. Cal. Jun. 15, 2016) (dismissing wrongful foreclosure claim under section 2924g where plaintiffs alleged that defendants "conduct[ed] the sale in a manner that discouraged or prevented competitive bidding," but did not "allege[] any facts regarding the manner in which Defendants conducted the sale").

The Borutas respond that their claims are not speculative because they "are supported by the fact that the property sold for far less than market value." Opposition to Chase Motion to Dismiss First Amended Complaint ("Oppo. Chase MTD") [Dkt. No. 37] 4. However, "[t]he mere inadequacy of price, absent some procedural irregularity that contributed to the inadequacy of price or otherwise injured the trustor, is insufficient to set aside a nonjudicial foreclosure sale." *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 105 (2011); *see also, e.g.*, *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 270 (2011) ("Given the presumption of regularity, if plaintiff

---

[5] Section 2924g(a) states in pertinent part that "[a]ll sales of property under the power of sale contained in any deed of trust or mortgage shall be . . . made at auction, to the highest bidder." Cal. Civ. Code § 2924g(a).

The Borutas allege that the short sale buyer offered to purchase the Property for $1,800,000, whereas Chase acquired the property at the trustee's sale for $1,890,000. *See* FAC ¶¶ 11, 14.

11

contended the sale was invalid . . . the burden rested with plaintiff affirmatively to plead facts demonstrating the impropriety").

The Borutas argue that they have pleaded "glaring procedural irregularities with the sale, namely, that [they] had been told that the property was not scheduled to be sold at foreclosure at all." Oppo. Chase MTD 4; FAC ¶ 13. They allege that they had a conversation with a Chase customer's service representative on April 3, 2019 who told them that "as of March 11, 2019, the trustee's sale of [their] property was suspended and that there was no sale date on the property." FAC ¶ 11. But their allegation that they did not know about the April 23, 2019 sale is not plausible given that it contradicts with the fact that they filed *Boruta I* on April 19, 2019 to stop the scheduled April 23, 2019 sale.

Even without taking that contradiction into consideration, their allegation is not enough to show a "prejudicial procedural irregularity." *See e.g.*, *Melendrez v. D & I Inv., Inc.*, 127 Cal. App. 4th 1238, 1258 (2005) (affirming trial court's conclusion that there was no procedural irregularity that overcame the presumption that the foreclosure was regularly and fairly conducted). The Borutas offer no allegations or legal theory supporting their speculation that Chase failed to follow any statutory procedures in connection with the trustee's sale or that Chase did not foreclose through a proper public auction in accordance to the requirements in Section 2924g.

### b. Section 2923.6

The Borutas also allege that the sale violated California Civil Code section 2923.6 because they "had not received a written response on their short sale application submitted on April 10, 2019 when Defendants sold the property on April 23, 2019." FAC ¶ 18. Section 2923.6 provides, in relevant part, "[i]f a borrower submits a complete application for a first lien *loan modification* offered by, or through, the borrower's mortgage servicer at least five business days before a scheduled foreclosure sale, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not . . . conduct a trustee's sale, while the complete first lien loan modification application is pending." Cal. Civ. Code § 2923.6(c) (emphasis added).

The Borutas' allegation under this theory fails for two reasons. First, they have not plausibly alleged that Section 2923.6 applies to short sales as opposed to loan modifications. They

12

concede that a trustee sale occurring while a short sale application is pending "may not be illegal under [section] 2923.6," but rather summarily argue that "[it] can still be willfully oppressive – which it was." Oppo. Chase MTD 4; FAC ¶ 18. They provide no support for the contention that conducting foreclosure during the pendency of a short sale application is actionable under California wrongful foreclosure law, whether under a "willfully oppressive" theory or otherwise.

Second, they have not plausibly pleaded that they submitted a complete loan modification application with sufficient supporting factual allegations. Their only allegation as to loan modification applications is contained in a single conclusory paragraph: "Since approximately 2009, Plaintiffs have been given the run around on their loan by Defendant Chase. Specifically, they have submitted loan modification and short sale requests to Chase with no resolution. Instead, Chase always instructs Plaintiffs to continue to submit and resubmit the same documents over and over again in pursuit of elusive loss mitigation options." FAC ¶ 10. The Borutas do not explain what loan modification applications have been submitted since 2009, and instead focus on a short sale application they sent on April 10, 2019. FAC ¶ 11; *see e.g.*, *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO SHX, 2014 WL 4359193, at *7 (C.D. Cal. Sept. 3, 2014) (section 2923.6 claim dismissed because "[a] bald allegation that a party submitted 'complete' loan modification applications–without sufficient supporting factual allegations–is a conclusory statement, and the Court does not rely on such assertions in evaluating the sufficiency of Plaintiff's complaint"; holding that "courts typically uphold the sufficiency of such claims only upon the submission of robust factual allegations demonstrating that the application was complete").

The Borutas have had multiple opportunities to provide sufficient allegations – I granted them leave to amend their complaint in *Boruta I* and they took the opportunity to amend their complaint here in *Boruta II*. The FAC is almost word-for-word identical to the original complaint. At each turn they have failed to add any allegation that a complete loan modification application was submitted that would require the scheduled foreclosure sale to be postponed in accordance with the requirements of Section 2923.6.

### 2. Prejudice to Party Attacking the Sale

The prejudice or harm element is met only if a plaintiff demonstrates "that the foreclosure

13

would have been averted but for [the] alleged deficiencies." *Reynoso v. Paul Fin., LLC*, No. 09-3225-SC, 2009 WL 3833298, at *4 (N.D. Cal. Nov.16, 2009). The Borutas allege that foreclosure could have been avoided through a short sale which Chase refused to consider before selling their property at foreclosure. FAC ¶ 21. But again, they have not cited to any authority suggesting that the possibility of a short sale amounts to actionable prejudice, *i.e.*, that Chase was required to agree to a short sale. Defendant JP Morgan Chase Bank, N.A.'s Reply Memorandum in Support of Motion to Dismiss First Amended Complaint ("Reply Chase MTD") [Dkt. No. 40] 3.

### 3. Tender of Their Debt

To maintain a wrongful foreclosure claim, a plaintiff must also allege that "the trustor . . . tenders the amount of the secured indebtedness or was excused from tendering." *Ram*, 234 Cal. App. 4th at 11. "When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure." *Alicea v. GE Money Bank*, No. C 09-00091 SBA, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Id.* (quoting *Karlsen v. Am. Sav. and Loan Ass'n.*, 15 Cal. App. 3d 112,117-18 (1971)). "A valid and viable offer of tender means that it is made in good faith, the party making the tender has the ability to perform, and the tender must be unconditional." *Id.*

Chase asserts that the FAC only contains a legal conclusion that the tender is not required because "the sale of property was void and not merely voidable." FAC ¶ 20. It contends that tender is required in this case because the Borutas' "theories are unsupported by non-speculative factual allegations, and are contradicted by the judicially noticeable public record (and their prior admissions)." Chase MTD 9.

The Borutas respond that they do not need to allege tender because their claims "are not based on irregularities in the foreclosure sale rendering the sale voidable, but that the sale was void." Oppo. Chase MTD 5. Even if they are not required to allege this element, they still fail to include plausible allegations that the foreclosure deed is void. *See, e.g.*, *Hundal v. PLM Loan Mgmt. Servs., Inc.*, No. 3:16-CV-01287-WHO, 2016 WL 7157644, at *8 (N.D. Cal. Dec. 8,

14

2016), *aff'd sub nom. Hundal v. Eagle Vista Equities, LLC*, 726 F. App'x 543 (9th Cir. 2018) (declining to excuse failure to plead the tender requirement for a wrongful foreclosure sale where plaintiff failed to plausibly allege that the foreclosure deed was void).

The Borutas analogize to *Menan v. U.S. Bank National Assn.*, 924 F. Supp. 2d 1151(E.D. Cal. 2013). In *Menan*, a borrower who defaulted on his home mortgage payments reached a forbearance agreement with his bank where the bank promised to rescind the Notice of Default if he timely made all agreed-to forbearance payments. *Menan*, 924 F. Supp. 2d at 1153. Although the borrower kept his side of the bargain, he alleged that the bank failed to rescind the Notice of Default and instead sold his home at a foreclosure sale in violation of its contractual promise. *Id.* The court found that tender was not required, even when the borrower sought to set aside the sale, because "[i]t would be bizarre to require plaintiff to tender the full amount of arrearage at a foreclosure sale which should not be taking place at all." *Id.* at 1160.

The Borutas argue that they are not required to allege tender because they too allege that the sale should not have taken place at all given their pending short sale application. Oppo. Chase MTD 5. But they do not cite to any authority for the proposition that a trustee must postpone a foreclosure during the pendency of a short sale application or that a trustee's deed recorded as a result of such a foreclosure is facially void. The situation in *Menan* is distinguishable because it involved a forbearance agreement, which created a contractual obligation not to proceed with a foreclosure sale. The Borutas have not alleged a forbearance agreement with Chase. To the contrary, Chase points out that Maria Boruta surrendered her interest in the Property to Chase in her 2016 bankruptcy proceedings, specifically to allow it to foreclose. *See* Chase RJN, Ex. I.

The Borutas do not provide a plausible theory that would excuse them from pleading the tender requirement. Because they fail to plausibly plead all three elements for a claim of wrongful foreclosure, Chase's motion to dismiss the wrongful foreclosure claim is GRANTED.

### B. Negligence

To state a claim for negligence, the Borutas must allege that Chase owed them a duty of care, which it breached, and the breach proximately caused them injury. *Thomas v. Stenberg*, 206 Cal. App. 4th 654, 662 (2012). The Borutas alleged that Chase had a duty to "investigate the loan

file and use reasonable care in handling [their] loan." FAC ¶ 33. They allege that Chase breached this duty because it "(1) mishandled [their] loan modification application by foreclosing on [their] home when [they] had a[] loss mitigation application pending and (2) by failing to postpone the sale of the property as promised." *Id.* Their negligence allegations refer to a loan modification application, but the FAC only alleges that they had applied for a short sale application. *See* FAC ¶¶ 1, 10-11, 18, 21, 33. The Borutas do not address Chase's argument that loan modification applications are different from short sale applications, and instead use the two terms interchangeably. Reply Chase MTD 3. But even if I assume that loan modification rules apply to short sale applications, the Borutas fail to allege a negligence claim against Chase.

Under California law, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1091 (1991). Whether a lender owes a duty of care to a borrower is subject to a balancing of the so-called *Biakanja* factors. *Id.* at 1098. These factors include: "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958).

California appellate courts are split on whether a loan servicer owes a duty of care to the borrower in the servicer's processing and review of loan modification applications. *See, e.g.*, *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 68 (2013) (holding loan servicer "did not have a common law duty of care to offer, consider, or approve a loan modification, or to offer [borrower] alternatives to foreclosure"); *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 948 (2014) (holding that loan servicer owed a duty of care). While there is no California Supreme Court precedent on point, a memorandum disposition in the Ninth Circuit has addressed it. *See Anderson v. Deutsche Bank Nat. Tr. Co. Americas*, 649 F. App'x 550 (9th Cir. 2016), *cert. denied sub nom. Anderson v. Aurora Loan Servs., LLC*, 137 S. Ct. 496 (2016). The *Anderson* court held "that application of the *Biakanja* factors does not support

imposition of such a duty where, as here, the borrowers' negligence claims are based on allegations of delays in the processing of their loan modification applications." *id. at* 649 F. App'x 552. It adopted the reasoning in *Lueras* and found that "when, as here, the modification was necessary due to the borrowers' inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, [is] not . . . closely connected to the lender's conduct." *Id.* (quoting *Lueras*, 211 Cal. App. 4th at 67). The court affirmed the district court's dismissal of the borrower's negligence claims for failure to allege facts giving rise to a common law duty of care. *Id.*; *see also Badame v. J.P. Morgan Chase Bank, N.A.*, 641 F. App'x 707, 709 (9th Cir. 2016) (affirming district court's grant of summary judgment on negligence claim because defendant "did not have 'a common law duty of care to offer, consider, or approve a loan modification'") (quoting *Lueras*, 221 Cal. App. 4th at 67); *Benson v. Ocwen Loan Servicing, LLC*, 562 F. App'x 567, 569-70 (9th Cir. 2014) (affirming district court's dismissal of borrower's negligence claim against loan servicer and trustee because neither owed plaintiff "a common law duty of care") (citing *Lueras*, 221 Cal. App. 4th at 67).

Chase argues that because the Borutas fail to allege that Chase's involvement in their loss mitigation review exceeded the scope of its conventional role as a loan servicer, they fail to allege that it owed them a duty of care under *Anderson* and *Lueras*. Chase MTD 13. The Borutas respond by relying on the other California appellate case, *Alvarez*, which held that a loan servicer owes a duty of care. Oppo. Chase MTD 7. But *Alvarez* was decided before *Anderson*, in which the court clearly adopted the reasoning in *Lueras*. *See Saldana v. Wells Fargo Bank, N.A.*, 367 F. Supp. 3d 1063, 1071 (N.D. Cal. 2019) ("The Ninth Circuit . . . has limited *Alvarez*'s reach."). I am persuaded by the reasoning in *Anderson* and *Lueras*.

The Borutas fail to allege a duty of care exists. Assuming that the alleged short sale application is a form of loan modification application, it was only necessitated because of the Borutas' undisputed eleven-year default. "[It] was necessary due to the [Borutas'] inability to repay the loan," and therefore the harm suffered from denial of a loan modification "[is] not . . . closely connected to [Chase's] conduct." *Anderson*, 649 F. App'x at 552 (quoting *Lueras*, 221 Cal. App. 4th at 67). When "the lender did not place the borrower in a position creating a need for

17

a loan modification, [ ] no moral blame . . . attache[s] to the lender's conduct." *Id.* (quoting *Lueras*, 221 Cal. App. 4th at 67).

Even if a duty of care exists, the Borutas' negligence claim would also fail because the Borutas do not allege facts supporting the breach, causation or injury elements. The foreclosure was conducted following an eleven-year default, and the Borutas only allege that they sent a short sale application on April 10, 2018, mere days before the scheduled April 23, 2018 trustee's sale. *See* FAC ¶ 11; Chase RJN, Ex. I. Chase's motion to dismiss the negligence claim is GRANTED.

### C. Violation of Cal. Bus. & Prof. Code 17200

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. Prof. Code § 17200. For the unlawful prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). But "[w]hen a statutory claim fails, a derivative UCL claim also fails." *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012).

The Borutas focus on the unlawful prong of the UCL and allege that Chase's violations of California Civil Code section 2923.6, fraud, and negligence constitutes unfair business practices in violation of the UCL. FAC ¶¶ 24, 26. Assuming that the Borutas have alleged a sufficient injury and have standing to bring a UCL claim, they fail to state a UCL claim because they fail to state a claim for the underlying violations.[6] The FAC dropped the fraud cause of action, and, as explained above, they fail to state a claim for wrongful foreclosure and negligence. Chase's motion to dismiss the UCL claim is GRANTED.

## CONCLUSION

The Borutas' motion to remand is DENIED. Both Quality's and Chase's motions to dismiss are GRANTED with prejudice. I gave the Borutas an opportunity to amend their

---

[6] Chase argues that the Borutas lack standing to bring a UCL claim because (i) they fail to allege that they suffered any loss of money or property and (ii) they cannot obtain restitution or injunctive relief given that they defaulted on the Loan. Chase MTD 10-11. The Borutas do not respond to this argument and instead summarily argue that "they have sufficiently alleged actual injury sufficient to show that they have standing to bring [the UCL] claim." Oppo. Chase MTD 6.

complaint in *Boruta I*, and instead they dismissed and filed a separate complaint. The Borutas then filed a FAC that is substantively the same. Any further amendment would be futile. The FAC is dismissed with prejudice.

**IT IS SO ORDERED.**

Dated: February 24, 2020



William H. Orrick
United States District Judge